[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Linda Bellone, and the defendant were married at Pawling, New York on March 19, 1977. The plaintiff has resided continuously in the state of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There is one minor child issue of the marriage, Linda Mezzatesta, born August 17, 1981. No other minor children have been born to the plaintiff wife since the date of marriage of the parties. Neither party has received state assistance. In addition to the one minor child, the parties also have three other adult children, ages twenty-seven, twenty-four and nineteen. CT Page 10490
The parties are in dispute as to the cause of the breakdown of the marriage. The plaintiff currently suffers from agoraphobia. She has suffered from that for approximately thirteen years. It is her claim that the defendant is responsible for that condition. The court finds that the plaintiff has failed to prove by a fair preponderance of the evidence that any activity of the defendant is the cause of that condition. The court does find that the primary cause of the breakdown of the marriage is the fault of the defendant.
The plaintiff has health insurance coverage provided as a result of the defendant's employment by Airborne Express.
The parties are in dispute as to the value of the family home located at 11 Muller Street, New Fairfield, Connecticut. The court finds that its fair market value is $140,000. It has a $22,632.38 first mortgage and a lien by the state of Connecticut for $12,200. The equity in the property is $105,155.62. The lien by the state of Connecticut is for a septic system loan. It has to be paid off when the home is sold. The lien was placed on the property in the summer of 1995. The parties purchased the family home on December 1, 1980, for $45,000. It was financed in part with a $30,000 mortgage. The remaining one-third of the purchase price was credited to the parties as a result of the fact that the home had been in the estate of one of the defendant's parents. The defendant had a one-third interest in the estate and that one-third interest was credited for the $15,000 down payment. In about 1990, the plaintiff received an automobile accident settlement of approximately $20,000. Approximately $11,000 of it was used to purchase a vehicle for their daughter who was in college and approximately $9000 was used for home furnishings. A market analysis was done regarding the family home on February 26, 1997, showing that the sales price range was between $140,000 and $143,000. Since the time it was purchased, extensive renovations were done to the interior of the home.
The plaintiff owns a 1996 Saturn with a value of $15,000, a loan balance of $7780, and an equity of $7220. That vehicle was purchased on December 29, 1995. The total price was $17,238.24. The vehicle is in the plaintiff's name only. The $7780 loan on the vehicle is from the plaintiff's mother. The plaintiff owned a prior vehicle that had been totaled in an accident and she received $3000 from that which was applied towards the purchase of the Saturn. The $3000 from the car insurance was a joint CT Page 10491 asset. She also had $3000 from joint funds that was used towards the purchase of the vehicle, as well as receiving $200 from her daughter. The plaintiff also shows that loan under liabilities as a liability to her mother, Theresa McGough. The balance due to her mother is $7780. She makes monthly payments on that loan of $230. In effect, she therefore shows the loan as a liability, thereby increasing her liabilities by the balance due and also shows it as a loan balance under motor vehicles, thereby reducing the equity in the motor vehicle. The plaintiff has savings bonds with a value of approximately $1400. She started saving $25 weekly to buy those bonds to be used for her retirement. She has a liability to CHIF with a balance of $4338.43 and a monthly payment of $57.94. That is a state loan that was used for the installation of windows and an oil burner. She has a liability to Sears in the amount of $744.69 with a monthly payment of $19. That liability was incurred to install air conditioning in the attic and one bedroom of the family home. Both the plaintiff and the defendant used the Sears credit card during the time they resided together. She has a liability to PNL Sanitation with a balance due of $120 for garbage pickup. She has a liability to Dr. Brandler with a balance due of $240, with monthly payments of $50. That was for dental work that was done for herself and the minor child. Eighty-nine dollars of that bill was for the minor child. The plaintiff received $2000 from her mother in February of 1997, that was used towards paying her attorney's fees. Her mother considers that $2000 to be a gift. She is presently paying $100 a month towards her attorney's fees, which currently have a balance due of $2000.
The plaintiff's mother has a checking account in which the plaintiff is also a cosigner. The plaintiff has never made any deposits or withdrawals from that account. There is approximately $500 in that account.
The parties are in dispute as to the value of the household furnishings and furniture. The court finds that its value is between $2000 and $3000.
The parties are in dispute as to the plaintiff's earnings from her beauty salon business. Her financial affidavit shows $331 gross weekly income. That is the gross weekly income that she has from that business after first deducting a $400 monthly payment that she has for her business, as well as the cost of the product that she uses in her business. The court finds that the net amount shown on her financial affidavit from her business of CT Page 10492 $278.74 weekly plus the amount shown for tips of $125 weekly is accurate. She has been in the hairdressing business since approximately 1975.
The defendant is employed part time by Airborne Express and part time by JIN Transportation as a taxi driver. He has an average net weekly income from Airborne Express of $235 to $275 weekly. His average net weekly income as a taxi driver varies between $125 to $200 weekly plus tips averaging between $40 and $75 weekly. For the purposes of the financial orders hereinafter entered, the court finds that his average net weekly income is $500. The defendant shows as liabilities a debt for the Connecticut state lien, CHIF, as well as P G Sanitation, all of which are also shown by the plaintiff as liabilities although the balances due shown by the defendant differs somewhat from the balances due shown by the plaintiff. In addition, the defendant has a liability for attorney's fees with a balance due of $1000, as well as credit card liabilities totalling $4500. The credit card liabilities were incurred as a result of his gambling. He has a Chevy Chase Bank credit card with a liability of $3100, a Prudential Bank credit card liability with a balance of $1000, and a Sears credit card liability of $400. He also has a $3200 IRS liability. The defendant presently drives a 1985 Dodge pickup with a value of $1000 and no loan balance. He uses it to do some snow plowing with. There is one good snow plow blade at the family residence. He has a gun collection with a value of $500 and tools that have a value of $750. He owns shares of stock in CYTEC Industries with a $200 estimated value. The defendant has a large collection of baseball cards. Those cards have a fair market value of $5000.
The court has considered the provisions of § 46b-82
regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issue of property division, and has considered the provisions of § 46b-56 regarding the issues of custody and visitation, and has considered the provisions of § 46b-84 and the child support guidelines regarding the issue of support, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders.
ORDERS
A. BY WAY OF DISSOLUTION CT Page 10493
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The defendant is ordered to pay the plaintiff alimony in the sum of $1 per year. Alimony shall terminate upon the earliest of the following events: (a) the death of the plaintiff: (b) the death of the defendant
2. The provisions of § 46b-86 (a) and § 46b-86 (b) are applicable.
3. The defendant is to make available to the plaintiff the health insurance that is through Airborne Express for the maximum period allowed by law. The parties are to divide equally the cost of that insurance.
C. BY WAY OF CUSTODY AND VISITATION
1. The court awards sole custody of the minor children to the plaintiff.
2. The defendant is awarded reasonable rights of visitation.
D. BY WAY OF SUPPORT
1. The defendant is ordered to pay to the plaintiff support in the amount of $110 per week.
2. The parties have to divide equally all health expenses incurred for the benefit of the minor children that are not covered under any health insurance policy.
3. The defendant shall maintain medical insurance coverage the equivalent of Blue Cross/Blue Shield and Major Medical for the benefit of the minor child. The parties shall equally share the cost of the unreimbursed medical and dental expenses incurred by the minor child. The provisions as to the maintenance of health insurance are subject to and in accordance with Connecticut General Statutes § 46b-84d.
E. BY WAY OF PROPERTY ORDERS
1. The defendant is to quitclaim all of his interest in the CT Page 10494 family home located at 11 Muller Street, New Fairfield, Connecticut to the plaintiff by November 13, 1997. The deed is to be delivered to the office of counsel for the plaintiff.
2. Simultaneously with receiving the quitclaim deed from the defendant, the plaintiff is to execute a promissory note and mortgage deed in favor of the defendant in the face amount of $18,000, less the amount of pendente lite arrearages that exist as of the date this decision is filed. Those arrearages, as found in a memorandum of decision simultaneously filed by this court, amounted to approximately $3700 plus attorney's fees. The parties are to appear in court on October 27, 1997, at 9:30 a.m. so that the court may determine any additional pendente lite arrearages that may have accrued from the date the trial was completed on August 14, 1997, or any payments made to the date this decision is filed. The total arrearages, as determined by the court on October 27, 1997, (not including the attorney's fees found due from the defendant to counsel for the plaintiff as a result of the defendant being found in contempt) are to then be deducted from the face amount of the $18,000 promissory note with the promissory note to then be in the remaining balance. The promissory note is to be due and payable without interest on August 17, 1999.
3. All assets shown on the plaintiff's financial affidavit, including the furniture and furnishings in the family home, are all awarded to the plaintiff.
4. The plaintiff is to pay the first mortgage and the state of Connecticut lien and hold the defendant harmless therefrom.
5. The plaintiff is to pay all of the liabilities shown on her financial affidavit and hold the defendant harmless therefrom.
6. The defendant is to pay all of the liabilities shown on his financial affidavit to Attorney Diaz, the IRS, and the credit card liabilities, and hold the plaintiff harmless therefrom.
7. The 1985 Dodge pickup shown on his affidavit is awarded to the defendant, as well as the plow that that pickup uses that is located at the family residence. He is to remove the plow from the family residence simultaneously with executing and delivering the quitclaim deed to the family residence. All furnishings in his possession, as well as the gun shown on his financial CT Page 10495 affidavit, the tools shown on his financial affidavit, and his baseball card collection, as well as his shares of stock in CYTEC Industries are all awarded to the defendant.
F. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
G. PENDENTE LITE ORDERS
1. The pendente lite order for the payment of attorney's fees is not merged in the judgment and is to include interest at the rate of 10 percent if not paid when due from the due date.
H. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and file it.
2. The parties are to exchange copies of their federal and state income tax returns by certified mail, return receipt or registered mail, return receipt within fifteen days after such returns have been filed for so long as there is an outstanding alimony and/or support order or any outstanding arrearage from any such orders.
Axelrod, J.